UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HARVEY, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>ADVISORS MORTGAGE GROUP, LLC; and DOES 1 through 20, inclusive,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 21-CV-1048 TWR (AGS)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION TO REMAND; (2) REMANDING ACTION TO THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO; AND (3) DENYING AS MOOT DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>(ECF Nos. 6, 7) |

Presently before the Court is Defendant Advisors Mortgage Group, LLC's Motion to Compel Arbitration or, in the Alternative, to Dismiss for Failure to State a Claim ("Def.'s Mot.," ECF No. 6) and Plaintiff Brian Harvey's Motion to Remand Action to State Court ("Mot. to Remand," ECF No. 7) (together, the "Motions"). The Motions are fully briefed, (*see* ECF Nos. 8–11), and the Court held oral argument on September 29, 2021. (*See* ECF No. 14.) Having carefully considered the Parties' arguments, the record, and the relevant law, the Court **GRANTS** Plaintiff's Motion to Remand and **DENIES AS MOOT** Defendant's Motion.

# BACKGROUND

On April 30, 2021, Plaintiff filed a putative class action Complaint in the Superior Court of California, County of San Diego. (*See generally* ECF No. 1-4 ("Compl.").) In his Complaint, Plaintiff generally alleges that Defendant, his former employer, systematically violated California's Labor Laws and Industrial Welfare Commission Wage Orders. (*See id.* ¶¶ 1–5.) He brings this action on behalf of "[a]ll California citizens currently or formerly employed by Defendants as nonexempt employees in the State of California at any time between November 3, 2016 and the date of class certification." (*See id.* ¶ 20 (footnote omitted).) Plaintiff brings seven causes of action for (1) failure to pay minimum wages; (2) failure to pay overtime; (3) failure to provide meal periods; (4) failure to permit rest breaks; (5) failure to provide accurate itemized wage statements; (6) failure to pay all wages due upon separation of employment; (7) violation of California's Unfair Competition Law ("UCL"), Cal. Bus & Profs. Code §§ 17200, *et seq.* (*See* Compl. ¶¶ 37–94.)

On June 2, 2021, Defendant filed a Notice of Removal in this Court, alleging diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). (*See generally* ECF No. 1 ("NOR").) Specifically, Defendant alleges that "Plaintiff's Complaint asserts claims between citizens of different states and puts in controversy, individually with respect to Plaintiff, an amount that exceeds $75,000." (*Id.* ¶ 8 (citing 28 U.S.C. § 1332(a)).)

On June 23, 2021, Defendant filed its Motion, seeking an Order compelling arbitration and dismissing this action pursuant to the Federal Arbitration Act, 9 U.S.C. ch. 1, and the Loan Officer Assistant Employment Agreement (the "Employment Agreement") that Plaintiff signed. (*See generally* Def.'s Mot. at 8–16.) Alternatively, Defendant seeks dismissal of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally* Def.'s Mot. at 16–25.) Plaintiff filed the instant Motion to Remand on June 25, 2021, asking the Court to send this action back to state

/ / /

court because Defendant has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.  (*See generally* Mot. to Remand.)

## MOTION TO REMAND

### I. Legal Standard

"The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002).  A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit.  *See* 28 U.S.C. § 1441(a).  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331, 1332(a).  A class action may also be removed under the Class Action Fairness Act of 2005 ("CAFA") so long as the parties are minimally diverse, more than $5,000,000 is in controversy, and there are at least 100 putative class members.  *See* 28 U.S.C. § 1332(d).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

The party invoking the removal statute bears the burden of establishing that federal subject-matter jurisdiction exists. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).  It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)), and courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988)); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985));  *but cf. Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[N]o antiremoval

presumption attends cases invoking CAFA." (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013))). Therefore, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

**II.    Analysis**

Although Plaintiff filed a putative class action, Defendant removed Plaintiff's Complaint from Superior Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a), (*see, e.g.*, NOR ¶¶ 4–5), rather than under CAFA. Through the instant Motion, Plaintiff seeks to remand his action to Superior Court. (*See generally* Mot. to Remand; ECF No. 7-1 ("Mem.").) Plaintiff does not contest that there is complete diversity of citizenship among the Parties, (*see* ECF No. 8 ("Opp'n") at 1); rather, Plaintiff contends that Defendant has failed to meet its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. (*See generally* Mot. to Remand at 2; Mem. at 2, 3–8.)

Federal courts have diversity jurisdiction "where the amount in controversy" exceeds $75,000, and the parties are of "diverse" state citizenship. *See* 28 U.S.C. § 1332. A defendant seeking to remove a case to federal court must provide only a "short and plain statement of the grounds for removal." *See* 28 U.S.C. § 1446(a). Consequently, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *See Dart Cherokee*, 574 U.S. at 87. But "[i]f the plaintiff [or the court] contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *See id.* at 88 (third and fourth alterations in original).

"[T]he plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus.*,

*Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)). "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (alteration in original) (quoting *Salter*, 974 F.3d at 964). "A factual attack 'contests the truth of the . . . allegations' themselves," *id.* (alteration in original) (quoting *Salter*, 974 F.3d at 964), or "make[s] a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700 (citing *Salter*, 974 F.3d at 964; *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the . . . jurisdictional threshold." *Id.* at 699 (citing *Ibarra*, 775 F.3d at 1197). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citing *Ibarra,* 775 F.3d. at 1199). "Both parties may submit evidence supporting the amount in controversy before the district court rules." *Harris*, 980 F.3d at 699 (citing *Salter*, 974 F.3d at 963; *Ibarra*, 775 F.3d at 1197). "The district court should weigh the reasonableness of the removing party's assumptions." *Id.* at 701. "After considering any evidence put forth by the parties, and assessing the reasonableness of the defendant's assumptions, 'the court then decides where the preponderance lies.'" *Id.* (quoting *Ibarra*, 775.F3d at 1198).

"In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1197. "Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). But "[w]here it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam). Because it is not facially evident from Plaintiff's Complaint that

more than $75,000 is in controversy, the burden is on Defendant to establish—by a preponderance of the evidence—that the amount in controversy exceeds $75,000. *See Matheson*, 319 F.3d at 1090. The Court concludes that Defendant has failed to meet its burden here.

First, Defendant is incorrect that Plaintiff must introduce his own evidence to prevail on his Motion to Remand. (*Cf.* Opp'n at 4 ("[I]t is not enough for Mr. Harvey to 'contest' the amount-in-controversy with mere hand waiving because a factual challenge to the amount-in-controversy requires plaintiff to 'submit proof,'. . . or to show why the jurisdictional allegations 'are not supported by evidence.'" (quoting *Dart Cherokee*, 574 U.S. at 88–89; *Harris*, 980 F.3d at 700)); *see also id.* at 1, 8.) Once Plaintiff filed his Motion to Remand, Defendant was obligated to introduce evidence to establish by a preponderance of the evidence that, based on its reasonable assumptions, the amount in controversy exceeds $75,000. *See Harris*, 980 F.3d at 700–01. While Plaintiff "*may* submit evidence," *see id.* at 699 (emphasis added) (citing *Salter*, 974 F.3d at 963; *Ibarra*, 775 F.3d at 1197), he is not obligated to do so unless Defendant "has first come forward with sufficient evidence to meet its initial burden." *See Townsend v. Brinderson Corp.*, No. CV 14-5320 FMO (RZx), 2015 WL 3970172, *3 (C.D. Cal. June 30, 2015) (citing *Ibarra*, 775 F.3d at 1197, 1199); *see also, e.g.*, *Harris*, 980 F.3d at 700–02 (granting motion to remand despite the fact that "[the plaintiff] did not introduce evidence outside the pleadings" because the defendant had "relied on assumptions . . . that were unreasonable" and "failed to provide *any* evidence to support its assumption[s]" (emphasis in original)). Because Plaintiff contests the sufficiency of the evidence underlying Defendant's assumptions, (*see* ECF No. 11 ("Reply") at 2–3), Plaintiff need not introduce his own affirmative evidence to demonstrate that Defendant has failed to meet its burden.

Second, Defendant contends that the amount in controversy for Plaintiff should be calculated based on the putative class period beginning November 3, 2016, rather than the considerably shorter period during which Defendant actually employed Plaintiff. (*See*

Opp'n at 5.) But Defendant itself introduces evidence that it employed Plaintiff from August 27, 2019, to April 23, 2021. (*See* ECF No. 8-1 ("Wright Decl.") ¶ 8.) On the record before the Court, amounts from any other time periods clearly are not "in controversy" with respect to Plaintiff individually.

Third, Defendant argues that Plaintiff's claims for failure to pay minimum wage and failure to pay overtime are not duplicative and therefore should both be included in the amount-in-controversy calculation. (*See* Opp'n at 6–7.) Although Defendant attempts to distinguish *Vasquez v. Randstad US, L.P.*, No. 17-CV-04342-EMC, 2018 WL 327451 (N.D. Cal. Jan. 9, 2018), the Court finds its reasoning persuasive. Here, Plaintiff alleges that, "[t]o the extent these [uncompensated] hours do not qualify for the payment of overtime, Plaintiff and Class Members were not being paid at least the lawful minimum wage for their work." (*See* Compl. ¶ 39.) Although "[t]o the extent" may not mean "alternatively," (*see* Opp'n at 6), it does convey a degree. Here, that degree is between those hours under eight hours per day for which Plaintiff must be compensated with minimum wages and those hours above eight hours per day or forty hours per week for which Plaintiff must be compensated with overtime wages. In other words, based on the plain language Plaintiff uses in his Complaint, it would appear that Plaintiff does not allege that he was both underpaid by the hour and, additionally, unpaid for his overtime. This inference is confirmed by Defendant's own evidence that Plaintiff's base pay was $15 per hour, (*see* Wright Decl. ¶ 40; *see also* Wright Decl. Ex. A at 17), which exceeds California's minimum wages of $12 through $14 per hour for the years Defendant actually employed Plaintiff. *See* Cal. Dept. of Indus. Relations, Minimum Wage, *available at* dir.ca.gov/dlse/faq_minimumwage.htm (last accessed Sept. 20, 2021).[1] Consequently, as in *Vasquez*, "how this time should be counted for purposes of

---

[1] The Court may take judicial notice of public records, including those concerning the minimum wage. *See, e.g.*, *Lowe v. Lifestyle Publ'ns, LLC*, No. SACV19198JVSADSX, 2019 WL 1500665, at *2 (C.D. Cal. Apr. 5, 2019) (taking judicial notice of the same California Department of Industrial Relations webpage); *see also Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (official records on government websites are proper subjects for judicial notice).

calculating the amount-in-controversy depends on whether employees worked more or less than 8 hours per day or 40 hours per week." *See* 2018 WL 327451, at *3. According to Plaintiff's employment agreement, he was "scheduled to work forty (40) hours per week (the "Maximum Hours")." (*See* Wright Decl. Ex. A at 16.) On this record, the Court concludes that the estimated unpaid minimum wages would be duplicative of the estimated unpaid overtime wages. Accordingly, the Court excludes the estimated unpaid minimum wages from the amount-in-controversy calculation.

This brings the Court to Defendant's amount-in-controversy computation. Defendant first calculates the unpaid minimum wages at issue as $38,400. This calculation is based on the unreasonable assumptions that (1) Plaintiff, who was paid $15 per hour (a wage exceeding the minimum wage), was underpaid by $5 per hour; and (2) Plaintiff, who was employed by Defendant from August 27, 2019, to April 23, 2021, is seeking unpaid minimum wages from November 3, 2016, to the present. (*See* Opp'n at 9–10 & n.2.) Additionally, the Court has concluded that, absent additional evidence that Plaintiff worked fewer than his contracted forty hours per week, the unpaid minimum wage claim is duplicative of Plaintiff's unpaid overtime claim. The Court therefore concludes that Defendant has failed to meet its burden of establishing by a preponderance of the evidence that any amount is in controversy with respect to the unpaid minimum wage claim.

Regarding the overtime claim, Defendant contends that $34,680 to $43,080 is at issue, with $15,570 at issue for the period during which Plaintiff was actually employed by Defendant. (*See* Opp'n at 11–13 & nn.3–5.) For the $34,680 figure, Defendant assumes that Plaintiff worked ten hours per week of overtime, compensated at 1.5 times the minimum wage for the year in question. (*See id.* at 11–12 & n.3.) The $43,080 calculation is based on Plaintiff's actual base pay rate of $15 per hour. (*See id.* at 13 & n.4.) Given Defendant's evidence that it employed Plaintiff at $15 per hour only between August 27, 2019, and April 23, 2021, Defendant's estimate of $17,200 is the only
///

calculation supported by the record.² (*See id.* at 13 n.5.) Plaintiff, however, contests Defendant's assumed violation rates. (*See* Reply at 5–6.) With respect to overtime, for example, Defendant assumes that Plaintiff worked ten hours per week, or approximately two hours every weekday, of uncompensated overtime. (*See* Opp'n at 11–13.)

"As seemingly is always the case in wage-and-hour lawsuits attempting to find their way to federal court, violation rates are key to the calculations necessary to reach the . . . amount-in-controversy figure." *Cackin v. Ingersoll-Rand Indus. U.S., Inc.*, No. 820CV02281JLSJDE, 2021 WL 2222217, at *2 (C.D. Cal. June 2, 2021) (quoting *Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRX, 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019)). Although "[a] defendant need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty," *see Harris*, 980 F.3d at 701 (citing *Dart*, 574 U.S. at 88–89; *Arias*, 936 F.3d at 925), the assumptions the defendant uses in calculating its damages assessment "cannot be pulled from thin air but need some reasonable ground underlying them." *See Ibarra*, 775 F.3d at 1199. Apparently relying on *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999 (C.D. Cal. 2009), Defendant contends only that "it is reasonable to assume" that Plaintiff worked ten hours of overtime per week. (*See* Opp'n at 11.) But *Behrazfar*, which predates *Ibarra*, allowed an assumption that the putative class members worked 2.5 hours of overtime per week because that assumption was "relatively conservative and *based on evidence*," including the allegations in the complaint that the named plaintiff worked between forty and sixty hours per week and her deposition testimony that she typically worked ten hours of overtime per week. *See Behrazfar*, 687 F. Supp. 2d at 1004 (emphasis added).

Such evidence is absent here. Instead, Ms. Wright attests only that she "do[es] not believe Mr. Harvey worked any unpaid overtime hours," but that those employees who "choose" to work overtime, as reflected on their time-sheets, "could consistently accrue

---

² Plaintiff calculates $19,350 for the same period. (*See* Reply at 7.) Because the burden is on Defendant to prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, the Court instead uses Defendant's calculation of $17,200.

ten hours of overtime per week." (*See* Wright Decl. ¶ 38.) Plaintiff, however, alleges that "Defendants *required* Plaintiff and Class Members to work in excess of eight (8) hours in a day, forty (40) hours in a week, and/or for a seventh consecutive day in a workweek without paying Plaintiff and Class Members overtime wages for their work." (*See* Compl. ¶ 50 (emphasis added).) Because these situations are not analogous, Ms. Wright's declaration does not support the assumption that Plaintiff worked ten hours of uncompensated overtime per week, nor does Defendant attempt to substantiate any other overtime violation rate. Consequently, Defendant fails to meet its burden of establishing by a preponderance of the evidence a reasonable estimate of Plaintiff's unpaid overtime. *See, e.g.*, *Smith v. Diamond Resorts Mgmt., Inc.*, No. ED-CV-152477-VAPSPX, 2016 WL 356020, at *3 (C.D. Cal. Jan. 29, 2016) (rejecting assumption of one hour of unpaid overtime per week because the "[d]efendants have failed to put forth any evidence supporting a violation rate of one hour of overtime per week"). Defendant's calculations of the amounts in controversy for Plaintiff's unpaid rest and meal breaks, (*see id.* at 13–15 & nn.6–7; *see also* Wright Decl. ¶¶ 41–50 & nn.6–7), suffer this same defect: Defendant assumes—without providing evidentiary support—a violation rate of three hours per week for each. *See, e.g.*, *Smith*, 2016 WL 356020, at *3 (concluding that assumption of one missed meal period and one missed rest break per week was unsupported by evidence (citing *Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *6 (E.D. Cal. Sept. 17, 2013); *Munoz v. Cent. Parking Sys., Inc.*, No. CV 10-6172 PA (RCx), 2010 WL 3432239, at *2 (C.D. Cal. Aug. 30, 2010)).

  Finally, Defendant assumes that Plaintiff is entitled to the maximum available penalties for inaccurate wage statements and waiting time penalties. (*See* Opp'n at 15–17 & nn.8–9.) Although Plaintiff filed his Complaint on April 30, 2021, (*see generally* Compl.), only one week after leaving Defendant's employ on April 23, 2021, (*see* Wright Decl. ¶ 56), the Court concludes based on the continued pendency of this case that it is reasonable to assume that Plaintiff was not paid the full compensation he claims was due

for thirty days. Consequently, the Court concludes that Defendant's calculation for the maximum waiting time penalties of $3,600 is reasonable. The same is not true, however, of Defendant's calculation of the penalties at issue for Plaintiff's inaccurate wage statements. Defendant employed Plaintiff for 86 weeks, or 43 pay periods. (*See* Wright Decl. ¶ 52.) To obtain the maximum penalty of $4,000, based on penalties of $50 for the initial pay period and $100 for each additional pay period, Defendant would have had to provide inaccurate wage statements for at least 41 pay periods of Plaintiff's 43 pay periods of employment. (*See id.* ¶ 53.) In other words, Defendant claims approximately a 95% violation rate based on Plaintiff "alleging that he regularly was not paid minimum wage and overtime." (*See id.*) Given Defendant's failure to introduce any evidence supporting a 95% violation rate, the Court concludes that Defendant has failed to establish by a preponderance of the evidence that $4,000 is at issue for Plaintiff's claim for failure to provide accurate wage statements.

Even accepting Defendant's calculations based on Plaintiff's actual base wage and prorated for the period Defendant actually employed Plaintiff, the amount in controversy comes only to $32,000,[3] well below the $75,000 jurisdictional threshold. Defendant contends, however, that "the attorneys' fees incurred in an individual California wage and hour suit typically exceed $75,000." (*See* Opp'n at 18 (citing *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010)).) But this action is not an individual action, (*see generally* Compl.), and Defendant cites no authority allowing the Court to disregard Plaintiff's "boilerplate, copy-and-paste class claims." (*See* Opp'n at 17.) Instead, Defendant accuses Plaintiff of "gamesmanship," contending that, under CAFA, aggregation is required for all putative class actions. (*See id.* at 18–21.) Defendant, however, removed this action under Section 1332(a)—which requires Defendant to establish that the amount in controversy for

---

[3] Excluding the duplicative claim for unpaid minimum wages, *see supra* pages 7–8, this amount is calculated based on $17,200 for unpaid overtime, (*see* Opp'n at 13 n.5); $3,600 each (or $7,200 total) for unpaid break and meal periods, (*see id.* at 14 & n.7); $4,000 for failure to provide accurate, itemized wage statements, (*see id.* at 15–16); and $3,600 for waiting time penalties. (*See id.* at 17 n.9.)

Plaintiff's claims alone exceeds $75,000—rather than under CAFA, which would require Defendant to establish that the amount in controversy for the putative class would exceed $5,000,000.[4] (*See generally* NOR.) Defendant cannot invoke those provisions of CAFA that facilitate its burden, i.e., aggregation, without accepting the concomitant encumbrances, including establishing by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(6).[5] The only "nonsensical result" here would be to allow any putative class action alleging entitlement to attorneys' fees filed in state court to be removed to federal court on the basis that the aggregated attorneys' fees alone would exceed $75,000. (*Cf.* Opp'n at 20 (citing Committee on the Judiciary, S. Rep. No. 109-14, at 10–11 & n. 29 (2005)).) The Court therefore declines to accept estimated fee awards based on fees awarded in individual wage-and-hour cases or aggregated wage-and-hour class actions. *Cf. Kanter v. Warner-Lamber Co.*, 265 F.3d 853, 858 (9th Cir. 2001) (requiring attorneys' fees sought by putative class pursuant to California's Consumer Legal Remedies Act to be divided among all members of the putative class for calculating the $75,000 amount in controversy).

"[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018)). "The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *See id.* at 927–28 (quoting *Fritsch*, 899 F.3d at

---

[4] As Plaintiff notes, (*see* Reply at 3 n.1), it would appear that Defendant cannot meet its burden under CAFA because it estimates that there are only 24 to 48 putative class members, (*see* Wright Decl. ¶ 15), whereas CAFA requires at least 100 putative class members. *See* 28 U.S.C. § 1332(d)(5)(B).

[5] Defendant contends that Section 1332(d)(6) should be read "expansively" to permit aggregation in all class actions, whether removed under CAFA or not. (*See* Opp'n at 20–21.) But this provision, which is part of CAFA, is clearly limited on its face to class actions removed under CAFA, which requires the amount in controversy to exceed five million dollars: "In any class action, the claims of the individual class members shall be aggregated *to determine whether the matter in controversy exceeds the sum or value of $5,000,000*, exclusive of interests or costs." 28 U.S.C. § 1332(d)(6) (emphasis added).

788). "The type of evidence that courts have considered to estimate reasonable future attorney's fees include a percentage of economic damages alleged, fee awards in similar cases, and estimates of the number of hours that will likely be required to litigate the pending case multiplied by the opposing counsel's hourly rate." *Peck v. First Student, Inc.*, No. 3:17-CV-0863-SI, 2017 WL 3288116, at *3 (D. Or. Aug. 2, 2017) (collecting cases). The district court retains discretion, however, "to determine whether defendants have carried their burden of proving future attorneys' fees, and to determine when a fee estimate is too speculative because of the likelihood of a prompt settlement." *See Fritsch*, 899 F.3d at 795.

Here, relying on two other putative class action cases involving Plaintiffs' counsel—*Alkady v. First Transit, Inc.*, No. 16-cv-2291, 2021 WL 2072376 (S.D. Cal. May 24, 2021), and *Jimenez v. O'Reilly Auto. Inc.*, No. SACV1200310AGJPRX, 2018 WL 6137591 (C.D. Cal. June 18, 2018)—Defendant contends that the attorneys' fees at issue range between $258,922.50 and $298,501.50, or $5,394.22 to $12,437.56 on a non-aggregated basis. (*See* Opp'n at 22–23 & nn.13–14.) Defendant's calculation is based on the "average billing rate" of $592.50 calculated in *Alkady* based on the billing rates of five specific attorneys—partners Samuel A. Wong and Jessica A. Campbell and associates Laura Birnbaum, Simon Kwak, and Ali Carlsen—multiplied by the 437 hours billed in *Alkady* or the 503.8 hours in *Jimenez* divided by twenty-four potential class members in this action. (*See* Opp'n at 22–23 & n13 (citing *Alkady*, 2021 WL 2072376, at *5; *Jimenez*, 2018 WL 6137591, at *3).) Defendant adds that "[a] trial and appeal would . . . double or triple that amount, i.e., to more than $37,000 on a prorated basis." (*See id.* at 23.) Although the Court could identify several deficiencies with this calculation,[6] it need not undertake this fruitless exercise—even assuming Defendant's

---

[6] Not only has Defendant failed to identify in what ways these two cases are similar to the instant action, but both *Alkady* and *Jimenez* involved much larger classes. *See Alkady*, 2021 WL 2072376, at *2 (1,114 putative class members); *Jimenez*, 2018 WL 6137591, at *1 (1,504 confirmed class members). Common sense dictates that additional class members require additional hours, particularly when it comes to matters such as discovery. In fact, the non-aggregated fee awards for the class members in

maximum prorated fee award of $37,000, the total amount in controversy comes to only $69,000, which falls below the $75,000 threshold.

In sum, Defendant has failed to meet its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. Nonetheless, Defendant requests the opportunity to serve jurisdictional discovery. (*See* Opp'n at 24–25.) In the Ninth Circuit, however, whether to allow jurisdictional discovery is committed to the district court's discretion, and such discovery is not required unless Defendant will suffer "actual and substantial prejudice." *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 691 (9th Cir. 2006) (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). Defendant makes no argument regarding prejudice except that "[a]llowing this discovery prevents unfairly prejudicing [Defendant]'s right of access to this Court or wasting resources." (*See* Opp'n at 25 (citing 28 U.S.C. § 1446(c)(1)).) First, Defendant has no right of access to this Court unless it meets its burden of demonstrating that this Court has subject-matter jurisdiction, *see supra* pages 3–6, which Defendant has failed to do here. Second, Defendant had the opportunity to engage in discovery in the Superior Court prior to removing this action. Rather than "try to pin Plaintiff down, in state court . . . , with respect to what the Complaint's allegations actually mean with respect to violation rates[, p]erhaps . . . by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement," *see Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRX, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019), Defendant reflexively removed Plaintiff's "broad and vague" Complaint within thirty days of its receipt. (*See* Opp'n at 24; NOR ¶ 3; *see also, e.g.*, Opp'n at 1 ("opaque"), 7 ("vague . . . allegations"), 10 ("does not disclose the precise factual basis for his claim"), 14 ("vague language" and "so lacking in factual allegations" (quoting *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F.

---

*Alkady* and *Jimenez* came to $232.43 and $198.48, respectively. The upper end of Defendant's fee calculation also assumes the minimum number of potential class members (24), thereby maximizing the non-aggregated fee calculation, without providing a factual basis for this assumption. (*See* Wright Decl. ¶ 15 (estimating between 24 and 48 putative class members).)

Supp. 3d 1025, 1028, 1030 (C.D. Cal. 2017))), 17 ("boilerplate, copy-and-paste class claims"), 21 ("intentional opacity . . . and . . . refusal . . . to disclose their alleged factual basis").) Any resultant prejudice is therefore of Defendant's own making, particularly given "the importance of 'guard[ing] against premature and protective removals and minimiz[ing] the potential for a cottage industry of removal litigation.'" *Abrego*, 443 F.3d at 691 (alterations in original) (quoting *Harris*, 425 F.3d at 698). Accordingly, the Court concludes that remand is appropriate. *See id.* at 691–92; *see also Harris*, 425 F.3d at 698 ("By assuring that removal occurs once the jurisdictional facts supporting removal are evidence, we also ensure respect for the jurisdiction of state courts.").

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Remand (ECF No. 7) and **REMANDS** this action to the Superior Court of California, County of San Diego. Accordingly, the Court **DENIES AS MOOT** Defendant's Motion to Compel Arbitration (ECF No. 6).

**IT IS SO ORDERED.**

Dated: October 1, 2021

Honorable Todd W. Robinson
United States District Court